# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID PRIDE**, | : |
| *Plaintiff* | : Case No. 19-cv-0680-JMY |
| v. | : |
| **WAL-MART STORES EAST, LP, ET AL.**, | : |
| *Defendants* | : |

# MEMORANDUM

**YOUNGE, J.**                                                                 **NOVEMBER 7, 2019**

In this employment discrimination case, Plaintiff David Pride ("Plaintiff") files suit against his former employer, Defendant Wal-Mart Stores East, LP ("Wal-Mart"), and its third-party medical and benefits administrator, Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick") (collectively, "Defendants"). Plaintiff asserts that Defendants unlawfully discriminated and retaliated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Plaintiff also asserts a claim for tortious interference with contractual relations solely against Sedgwick. Now before the Court is Sedgwick's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion," ECF No. 13). The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons that follow, Sedgwick's Motion will be granted.

I.  BACKGROUND

   A. Facts

Unless otherwise noted, the following facts and allegations are taken from the operative complaint, Plaintiff's First Amended Complaint ("FAC," ECF No. 10).  On or around October 2011, Wal-Mart hired Plaintiff as an Overnight Restocker.  (*Id.* ¶ 13.)  Sedgwick administered FMLA requests, disability accommodation requests, and healthcare benefits for Wal-Mart's employees.  (*Id.* ¶¶ 20-22.)  "In November 2016, Plaintiff advised Defendants that he would need to have right hip surgery."  (*Id.* ¶ 34.)  "In December 2016, Plaintiff received notification from Sedgwick that his medical leave related to his right hip surgery and recovery was approved for 12 weeks"—"from December 22, 2016 through March 16, 2017."  (*Id.* ¶¶ 35-36.)  In March 2017, Plaintiff advised Sedgwick that he needed additional medical leave to recover, which was granted through April 17, 2017.  (*Id.* ¶¶ 40, 42.)

"On or about April 6, 2017, Plaintiff's physician examined Plaintiff and cleared him to return to work with restrictions[;] Plaintiff's physician faxed the certification clearing Plaintiff to return to work with restrictions to Sedgwick."  (*Id.* ¶¶ 47, 49.)  According to Plaintiff, Sedgwick "never sent the certification it received . . . to Wal-Mart."  (*Id.* ¶ 69.)

Upon Plaintiff's arrival back to work on April 17, 2017, "Plaintiff provided HR Manager Riley with a copy of his doctor's Return to Work Certification which his physician had previously faxed to Sedgwick."  (*Id.* ¶ 56.)  Wal-Mart's HR Manger then told Plaintiff "that his job had been replaced and he would be terminated immediately due to the fact that he returned with restrictions."  (*Id.* ¶ 58.)  According to Plaintiff, "Sedgwick's failure to submit Plaintiff's April 6, 2017 certification to Wal-Mart had a direct influence on Plaintiff's firing."  (*Id.* ¶ 70.)

### B. Procedural History

Plaintiff filed this action against Defendants on February 19, 2019. (ECF No. 1.) On May 20, 2019, Plaintiff filed the FAC, in which Plaintiff brings nine claims: (1) disability discrimination in violation of the ADA against Wal-Mart; (2) failure to accommodate in violation of the ADA against Wal-Mart; (3) retaliation in violation of the ADA against Wal-Mart; (4) disability discrimination in violation of the PHRA against Wal-Mart and Sedgwick; (5) failure to accommodate in violation of the PHRA against Wal-Mart and Sedgwick; (6) retaliation in violation of the PHRA against Wal-Mart and Sedgwick; (7) retaliation in violation of the FMLA against Wal-Mart and Sedgwick; (8) interference in violation of the FMLA against Wal-Mart and Sedgwick; and (9) tortious interference with contractual relations against Sedgwick. (FAC ¶¶ 72-131.) Plaintiff requests lost past and future earnings, liquidated and/or punitive damages, emotional distress and/or pain and suffering damages, and costs of suit. (*Id*. ¶¶ B-E.)

Wal-Mart filed its Answer on June 13, 2019. (ECF No. 12.) Sedgwick filed the instant Motion to Dismiss on June 13, 2019. Plaintiff filed his opposition to Sedgwick's Motion on June 26, 2019 ("Opposition," ECF No. 14). Sedgwick filed a reply on July 3, 2019 ("Reply," ECF No. 17).

## II. LEGAL STANDARD

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id*. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate,*

*LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *City of Cambridge Retirement Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

## III. DISCUSSION

Sedgwick moves the Court to dismiss all claims asserted against it, arguing that Plaintiff has failed to allege sufficient facts to establish that Sedgwick was his employer, a pleading requirement under the FMLA and PHRA, and that Plaintiff's claim for tortious interference with contractual relations is not recognized under Pennsylvania law. (Motion at 4-8.) In response, Plaintiff argues that "directly due to Sedgwick's substantial impact on Plaintiff's employment with Wal-Mart, it was Plaintiff's joint-employer under the FMLA and PHRA[,]" and that he can "maintain his claim for tortious interference with contractual relations even if he was employed at will." (Opposition at 5-6, 14.) The Court will address each of Sedgwick's arguments in turn.

### A. Plaintiff Fails to Plead Facts Demonstrating that Sedgwick was Plaintiff's Joint Employer under the FMLA

Because only employers can be liable for discrimination claims brought pursuant to the FMLA, Plaintiff must plead sufficient facts to allege that Sedgwick was his employer. 29 U.S.C. § 2611(4)(A)(i)-(iv); s*ee Ross v. Gilhuly*, 755 F.3d 185, 191 (3d Cir. 2014) (noting that in order to state a claim under the FMLA, an employee must plead that "the defendant was an employer subject to the FMLA's requirements"); *see also Reddinger v. Hosp. Cent. Servs., Inc.*, 4 F. Supp. 2d 405, 411 (E.D. Pa. 1998) ("[I]n order to state a claim under the FMLA, a complaint must at least contain allegations which establish that, within the meaning of the FMLA, the defendant employer is an 'employer' and the plaintiff employee is an 'eligible employee.'"). To this end, Plaintiff relies on the doctrine of joint employer liability.

The United States Department of Labor's implementing regulations for the FMLA provide the following with respect to joint employment:

> (a) Where two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under the FMLA. Joint employers may be separate

and distinct entities with separate owners, managers, and facilities. Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will not be considered to exist in situations such as:

> (1) Where there is an arrangement between employers to share an employee's services or to interchange employees;
>
> (2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

25 C.F.R. § 825.106(a). In addition, the Third Circuit Court of Appeals has established a test to determine joint employment that the Court would need to apply to determine whether Defendants Wal-Mart and Sedgwick are indeed joint employers. *See In Re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012).[1]

Under the *Enterprise* test, courts are directed to consider whether the alleged joint employer (1) had the "authority to hire and fire" the employee; (2) had the "authority to promulgate work rules and assignments and to set the employee['s] conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment[;]" (3) was involved in the employee's "day-to-day supervision, including employee discipline;" and (4)

---

[1] *Enterprise* concerned whether there was a joint employment relationship under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, not the FMLA. Nevertheless, the regulations concerning joint employment under the FLSA are almost identical to those concerning joint employment under the FMLA. Compare 29 C.F.R. § 791.2(b) with 29 C.F.R. § 825.106(a). Moreover, our Court of Appeals has stated that "Congress, in drafting the FMLA, chose to make the definition of 'employer' materially identical to that in the FLSA and as such, decisions interpreting the FLSA offer the best guidance for construing the term 'employer' as it is used in the FMLA[.]" *Haybarger v. Lawrence Cty. Adult Probation and Parole*, 667 F.3d 408, 414 (3d Cir. 2012) (internal quotation marks and citation omitted).

had "actual control of employee records, such as payroll, insurance, or taxes." *Id*. The *Enterprise* Court, however, was quick to note "that this list is not exhaustive, and cannot be 'blindly applied' as the sole considerations necessary to determine joint employment." *Id*. (quoting *Bonette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469-70 (9th Cir. 1983)). Further, "[n]o single factor is dispositive and a weak showing on one factor may be offset by a strong showing on the other [three]." *Myers v. Garfield & Johnson Enters., Inc.*, 679 F. Supp. 2d 598, 608 (E.D. Pa. 2010).

Plaintiff argues that his FAC "provides numerous facts showing that Sedgwick at least indirectly controlled the conditions of his employment and his insurance." (Opposition at 10.) Namely, Plaintiff points to the following allegations: (1) Sedgwick had the authority to grant or deny requests for leaves of absences under the FMLA, and requests for an accommodation for a disability; (2) Sedgwick administered FMLA requests, disability accommodation requests, and healthcare benefits for Wal-Mart's employees; (3) Wal-Mart instructed Plaintiff to seek approval from Sedgwick regarding medical leave, and Sedgwick approved such medical leave; (4) Sedgwick made the decision to terminate Plaintiff's health coverage; (5) Sedgwick informed Plaintiff that his employment file indicated Plaintiff had resigned; and (6) Sedgwick's failure to submit Plaintiff's medical certification to Wal-Mart had a direct influence on Plaintiff's termination. (*See* FAC ¶¶ 15-18, 20-22, 53, 61, 70; *see also* Opposition at 6.) Sedgwick, however, maintains that Plaintiff has not pleaded facts "sufficient to meet any of these [*Enterprise*] factors that would establish that Sedgwick holds adequate supervisory authority over Plaintiff to make it his joint employer." (Reply at 2.)

After a thorough review of the FAC, the Court finds that Plaintiff has not alleged sufficient facts to satisfy the Third Circuit's joint employer standard. *See Enterprise*, 683 F.3d at

469. There is no allegation in the FAC that Sedgwick had the ability to hire or fire Plaintiff—rather, Plaintiff alleges that Wal-Mart hired him (*see* FAC ¶ 13), and though Plaintiff alleges that Sedgwick informed him that his employment file indicated he had resigned and that Sedgwick's actions had an influence on his termination (*see* FAC ¶¶ 61, 70), he also avers that it was Wal-Mart that fired him (*see* FAC ¶ 68). With regard to the second and third *Enterprise* factors, Plaintiff has not alleged any facts that would support a finding that Sedgwick supervised and controlled his work schedule on a day-to-day basis or that Sedgwick determined the rate and method of his pay. It appears from the FAC that Sedgwick did maintain employment records related to requests for and approvals of leave periods insofar as it was administering Wal-Mart's health benefits and FMLA compliance (*see* FAC ¶¶ 20-22), but Plaintiff has not alleged any facts showing that Sedgwick maintained actual control of his employment records generally, including any payroll, insurance, or tax records.

In light of the other allegations within the FAC, this maintenance is consistent with the assessment that Sedgwick itself was retained by Defendant Wal-Mart as a third-party administrator of Walmart's FMLA policies. Moreover, based on this Court's research, it appears that other district courts have held that third-party administrators are not considered employers under the FMLA. *See, e.g., Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 479 n.1 (E.D. Pa. 2014) (finding third-party administrator for FMLA claims not an employer within the FMLA's meaning); *Arango v. Work & Well, Inc.*, 930 F. Supp. 2d 940, 942-43 (N.D. Ill. 2013) (FMLA definition of employer has been interpreted to exclude third-party benefits administrators); *Zolner v. U.S. Bank Nat'l Ass'n.*, No. 15-48, 2015 WL 7758543 at *3 (W.D. Ky. Dec. 1, 2015) (granting motion to dismiss where plaintiff failed to show that third-party FMLA benefits administrator was a joint employer); *Baer v. Masonite Corp.*, No. 11-124, 2011 WL

3806279, at *4 (N.D. Ind. Aug. 29, 2011) ("[A] benefits administrator's mere tangential involvement with the termination decision is not sufficient as a matter of law to establish a joint employer relationship."); *Marshall v. Whirlpool Corp.*, No. 07-534, 2010 WL 348344, at *6 (N.D. Okla. Jan 26, 2010) ("As a third-party administrator, UniCare's role is to make benefit determination and act as a disbursing agent for the payment of disability benefits, not to make employment related decisions. Therefore, UniCare is not a proper party under the FMLA."). Based on this consistent and persuasive precedent from other federal district courts, and from the facts as alleged in Plaintiff's FAC, it is clear that Plaintiff has failed to allege that Sedgwick was his joint employer with Wal-Mart.

Accordingly, because Plaintiff has failed to adequately allege that Sedgwick was one of his joint employers, the Court will dismiss Plaintiff's claims asserted against Sedgwick for violation of the FMLA.

### B. Plaintiff Fails to Plead Facts Demonstrating that Sedgwick was Plaintiff's Joint Employer under the PHRA

Similar to the FMLA, Plaintiff must plead facts demonstrating that Sedgwick was his employer in order for Sedgwick to be liable for discrimination and retaliation claims under the PHRA. *See* 43 Pa. Cons. Stat. Ann. § 955. To this end, Plaintiff again relies on the doctrine of joint employer liability. (*See* Opposition at 11-13.) In the Third Circuit, "a joint employer relationship may exist for the purposes of [the PHRA] when 'two entities exercise significant control over the same employees.'" *Myers*, 679 F. Supp. 2d at 607 (citing *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997)).

In arguing for joint employer liability, Plaintiff relies almost exclusively on the *Graves* case. In *Graves* the Third Circuit took up "a narrow and unique question of employer liability . . . . whether the [plaintiff law clerks], who are formally considered employees of the judicial branch

9

of the Commonwealth of Pennsylvania, are precluded, as a matter of Pennsylvania law, from pursuing a federal employment discrimination claim against Dauphin County, Pennsylvania." *Graves*, 117 F.3d at 724. The Third Circuit began its analysis by recognizing that under Pennsylvania law, "the courts are considered the employers of judicial personnel." *Id*. at 727. However, the Third Circuit went on to state that "this fact does not preclude the possibility that a county may share co-employer or joint-employer status with the courts," if the unique facts of a case indicate that the two in fact acted as joint employers. *Id*. "[A]lthough a court may have the inherent right to hire and fire employees even though those employees are paid by a county—it may also have the derivative right to delegate employer-type responsibilities to a county." *Id*. The Third Circuit concluded that, in the case before it, the plaintiff law clerks had alleged sufficient facts "which, if proven, would allow them to show that Dauphin County, through its actions, was the *de facto* [joint] employer of the [c]lerks," regardless of the formal relationship. *Id*. at 728.

The Third Circuit provided several justifications for this conclusion. First, it stated that the "perhaps most important" allegation was that county employees hired two of the plaintiff law clerks. *Id*. It stated, "[i]n our view, this asserted fact alone should have precluded the district court from deciding the matter on a motion to dismiss." *Id*. Second, the Third Circuit found "it significant that the [plaintiff law clerks] were covered by the County's sexual harassment policy." *Id*. Additionally, the Third Circuit noted the plaintiffs' allegations "that they were told that they were County employees, that the County investigated their allegation of sexual harassment, [and] that they were subject to termination and/or reinstatement by the County." *Id*. at 729. "Although employee expectations are not dispositive of employer status," the Third Circuit found them relevant at the motion to dismiss stage. *Id*. at 728-29. In sum, the *Graves*

10

Court concluded, "the precise contours of an employment relationship can only be established by a careful factual inquiry." *Id*. at 729. The Third Circuit found in *Graves* that enough indicia of a joint-employer relationship existed in the complaint to survive a motion to dismiss. *Id*.

*Graves* is distinguishable from the case before this Court. First, unlike in *Graves*, there is no allegation that Plaintiff was told that he was Sedgwick's employee. Second, the Third Circuit stated in *Graves* that the "perhaps most important" factor in its joint employer analysis was that Dauphin County employees hired two of the plaintiff law clerks. *See id.* at 728. Here, Plaintiff alleges that "Wal-Mart hired Plaintiff in or around October of 2011 as an Overnight Restocker." (FAC ¶ 13.) Third, there are no allegations that Plaintiff was "subject to termination and/or reinstatement by [Sedgwick.]" *Graves*, 117 F.3d at 728. To the contrary, Plaintiff alleges in his FAC that "Wal-Mart fired Plaintiff," and more specifically, Wal-Mart's "HR Manager Riley [] told him that his job had been replaced and he would be terminated immediately due to the fact that he returned with restrictions." (FAC ¶¶ 57, 68.) Fourth, although the *Graves* Court found "it significant that the [c]lerks were covered by the County's sexual harassment policy," 117 F.3d at 728, the fact that Sedgwick administered Wal-Mart's policies (*see* FAC ¶¶ 51-53) does not indicate that Sedgwick was a joint employer. After consideration of the *Graves* factors, the Court finds that Plaintiff's FAC fails to sufficiently allege that a joint-employer relationship existed.

Accordingly, because Plaintiff has failed to adequately allege that Sedgwick was one of his joint employers, the Court will dismiss Plaintiff's claims asserted against Sedgwick for violation of the PHRA.

### C. Pennsylvania Law Does Not Recognize a Cause of Action for Tortious Interference With an Existing At-Will Employment Relationship

In his FAC, Plaintiff maintains that he "had a[n at-will] contractual relationship with Wal-Mart" and that "Sedgwick purposefully and specifically intended to interfere with [that contract] when it failed to timely notify Wal-Mart of Plaintiff's request for an accommodation and/or to approve his April 2017 request for an accommodation." (FAC ¶¶ 127-128; *see also* Opposition at 9-10 (characterizing his employment as "at-will").) In its Motion, Sedgwick contends that under current Pennsylvania law "a tortious interference with contractual relations claim cannot be based on an [existing] at-will employment contract." (Motion at 7.) Plaintiff counterargues that his claim is viable because federal district "[c]ourts have predicted that the Pennsylvania Supreme Court would recognize a cause of action for tortious interference with an existing, at-will employment relationship." (Opposition at 14 (internal quotation marks and citation omitted).)[2]

The Court agrees with Defendant. Pennsylvania law appears to hold that an at-will employee cannot allege the tort of intentional interference with contractual relations unless his or her employment is prospective. *See Hennessy v. Santiago*, 708 A.2d 1269, 1278-79 (Pa. Super. Ct. 1998) ("[W]e . . . hold that an action for intentional interference with performance of a contract in the employment context applies only to interference with a prospective employment relationship whether at-will or not, not a presently existing at-will employment relationship.").

---

[2] The Court notes, and the Parties do not contest, that under Pennsylvania law the elements of a cause of action for intentional interference with a contractual relation are: "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." *Crivelli v. General Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000) (citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997)).

This Court does, however, recognize that there is substantial debate among the district courts in Pennsylvania over *Hennessy*'s precedential value, and more specifically, whether the Pennsylvania Supreme Court would expressly adopt or overrule *Hennessey* if given the opportunity. *See Ransom v. Carbondale Area Sch. Dist.*, 982 F. Supp. 2d 397, 404-6 (M.D. Pa. 2013) (summarizing the debate over *Hennessy*'s status and collecting district court predictions on how the Pennsylvania Supreme Court would rule, and noting "despite the uncertainty surrounding the *Hennessy* decision, this [c]ourt is not an outlier in refraining to predict its demise"); *also* c*ompare Mifflinburg Tel., Inc. v. Criswell*, 80 F. Supp. 3d 566, 572 (M.D. Pa. 2015) ("[I]t is the considered view of this [c]ourt that the current state of Pennsylvania law does not allow tortious interference claims based on at-will employment contracts."), *with White v. Brommer*, 747 F. Supp. 2d 447, 472 (E.D. Pa. 2010) (predicting that "the Supreme Court of Pennsylvania will recognize a cause of action for tortious interference with an existing at-will employment relationship"). Notwithstanding this debate, the fact remains that *Hennessey* is the Pennsylvania Superior Court's most recent word on the issue and, therefore, is currently the law of Pennsylvania. *See Sephakis v. Pa. State Police Bureau of Records and Identification*, 214 A.3d 680, 687 n.8 (Pa. Super. 2019) (observing that "[a]s long as the [Superior Court] decision has not been overturned by our Supreme Court, it remains binding precedent") (internal quotation marks and citation omitted). Moreover, the Pennsylvania Superior Court has explicitly reaffirmed *Hennessy* on more than one occasion. *See Haun v. Cmty. Health Sys.*, 14 A.3d 120, 125 (Pa. Super. Ct. 2011). In *Haun*, the court concluded that "[u]nless or until *Hennessy* is overturned by an *en banc* panel of this [c]ourt, or by a decision of the Pennsylvania Supreme Court, it continues to be viable precedent for this [c]ourt and for the courts of common pleas." *Id*.

13

Accordingly, the Court concludes that Plaintiff's claim fails because Pennsylvania law does not recognize a cause of action for tortious interference with a presently existing at-will employment relationship. *See Hennessy*, 708 A.2d at 1278.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant Sedgwick's Motion to Dismiss. An appropriate Order will follow.

**IT IS SO ORDERED.**

                                        **BY THE COURT:**

                                        /s/ Judge John Milton Younge

                                        **Judge John Milton Younge**